JOURNAL ENTRY AND OPINION
{¶ 1} Appellant James W. Fuqua appeals the trial court's decision granting summary judgment in favor of Mustang Auto Sales Service, et al. ("Mustang Auto"). Fuqua assigns the following errors for our review:
 "I. The trial court abused its discretion and committed error of law in granting summary judgment where appellee failed to delineate specifically the basis upon which summary judgment is sought in violation of Civil Rule 7(B)(1), Civil Rule 56(C) and Civil Rule 56(E)."
 "II. The trial court abused its discretion in granting summary judgment to appellees on their counterclaim where there exist genuine issues of material fact."
 "III. The trial court abused its discretion and committed error of law in granting appellees (1) a money judgment (2) judgment not declared in the counterclaim."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On July 10, 2006, Fuqua filed a complaint against Mustang Auto in which he alleged that Mustang Auto breached a bailment contract by failing to return his 1997 Volkswagon Jetta. As a result of the breach, Fuqua sought approximately $19,000 for the conversion of his vehicle.
 {¶ 4} In support of his claim, Fuqua alleged that around July 23, 2003, he delivered his Volkswagon to Mustang Auto to be repaired; after delivering the Volkswagon to be repaired, he asked Mustang Auto about the progress of the repairs and its the whereabouts to no avail; and Mustang Auto failed to return his *Page 4 
Volkswagon. As a result, Fuqua had to purchase another vehicle for approximately $25,046, under a five year installment loan contract.
 {¶ 5} On October 4, 2006, Mustang Auto filed an answer and counterclaim. In its answer, Mustang Auto claimed Fuqua abandoned the Volkswagon. It also counterclaimed for repairs and storage fees in the amount of $2,300.
 {¶ 6} On December 4, 2006, Fuqua and Mustang Auto filed cross motions for summary judgment. In Fuqua's motion for summary judgment, he argued that approximately three days after delivering his Volkswagon to be repaired, he inquired about the progress of the repairs, but Mustang Auto was not forthcoming. Fuqua also alleged that on September 22, 2003, he demanded that Mustang Auto return the Volkswagon and has continued to demand its return, but to no avail.
 {¶ 7} In its motion for summary judgment, Mustang Auto alleged that Fuqua's Volkswagon, which had approximately 147,000 miles on it, was towed to their facility for the purposes of diagnosis and repairs. Mustang Auto contended that the Volkswagon had a faulty computer, which could only be repaired by a Volkswagon dealership. Mustang Auto stated that it contacted Fuqua by telephone, informed him about the diagnosis, and that it would cost approximately $800 to be repaired at a Volkswagon dealership. In addition, Mustang Auto informed Fuqua that he would be responsible for delivering the vehicle to the Volkswagon dealership, and that he was responsible for storage fees, pursuant to the company's posted storage fees. *Page 5 
Mustang alleged that Fuqua, a previous customer, was aware of the storage fees because it was conspicuously posted at its facility and was written on its invoices.
 {¶ 8} According to Mustang Auto, they sent Fuqua repeated notices requesting payment for the diagnosis and storage fees, but Fuqua never responded. After storing the vehicle for almost a year, Mustang Auto filed an Unclaimed Motor Vehicle Affidavit, pursuant to R.C. 4505. On August 22, 2005, the State of Ohio transferred title to the Volkswagon to Mustang Auto.
 {¶ 9} The trial court granted Mustang Auto's motion for summary judgment and awarded it $2,300 in storage fees.
 Summary Judgment {¶ 10} We will address Fuqua's assigned errors together because of their common basis of fact and law. Fuqua argues the trial court erred in granting Mustang Auto's motion for summary judgment. We disagree.
 {¶ 11} We review an appeal from summary judgment under a de novo standard of review.[1] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[2] Under Civ. R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary *Page 6 
judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, which is adverse to the nonmoving party.[3]
 {¶ 12} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[4] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[5]
 {¶ 13} In the instant case, Fuqua's underlying contention is that Mustang Auto breached the contract of bailment. We are not persuaded.
 {¶ 14} Pursuant to the law of bailment, the bailee's promise is to return the bailed property undamaged upon the termination of the bailment.[6] In order to state a prima facie case for breach of a bailment contract, the plaintiff must establish the following: (1) the contract of bailment existed, (2) delivery of the bailed property to the bailee, and (3) failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment.[7] When a plaintiff proves a prima facie case for *Page 7 
breach of a bailment contract, the burden of going forward with the evidence shifts to the bailee to explain the failure to redeliver the bailed property.[8]
 {¶ 15} In this case, there is no dispute that a bailment contract was created between Mustang Auto as bailee and Fuqua as bailor, or that Fuqua's Volkwagen was delivered to Mustang Auto. On appeal, Fuqua challenges the trial court's determination that he had not demonstrated that Mustang Auto had breached the bailment contract.
 {¶ 16} In support of the motion for summary judgment, Michael Bavely, the operator of Mustang Auto, submitted an affidavit stating that Fuqua's Volkswagon was delivered via tow truck to their facility on or about July 23, 2003, for purposes of diagnosis and repair. The affidavit also stated that Fuqua had been a customer of Mustang Auto and was aware of the storage fees policy that are conspicuously posted in numerous places at the facility and on previous invoices that Fuqua has received.
 {¶ 17} In addition, the affidavit stated that after diagnosing the problem and determining that the repairs could only be completed by a Volkswagon dealership, they contacted Fuqua to inform him. The affidavit stated that they informed Fuqua that he was responsible for delivering the Volkswagon to the dealership and that he would be responsible for storage fees pursuant to Mustang Auto's posted storage *Page 8 
fees. The affidavit stated that Fuqua never picked up the Volkswagon, nor made any arrangements to have the vehicle removed from the facility, therefore Fuqua began incurring storage fees.
 {¶ 18} The affidavit further stated that on September 2, 2003 and on October 2, 2003, Mustang Auto sent notices by regular mail to Fuqua's mailing address, which is maintained in its computer database, indicating that the Volkswagon was still in their possession and was incurring storage fees. The affidavit stated that on March 13, 2004, Mustang sent a third notice via certified mail to Fuqua indicating the past due invoices and that storage fees were being charged.
 {¶ 19} Finally, the affidavit stated that on October 16, 2004, Mustang Auto filed an Unclaimed Motor Vehicle Affidavit pursuant to R.C. 4505. The affidavit stated that on August 22, 2005, the State of Ohio transferred the Volkswagon to Mustang Auto.
 {¶ 20} Here, despite Fuqua's allegations that Mustang Auto breached the bailment contract, our review of the record reveals that Mustang Auto exercised reasonable and ordinary care in the numerous attempts to notify Fuqua of the status of his Volkswagon. Mustang sent three separate notices to Fuqua at the address maintained in their computer base, indicating the past due invoice and mounting storage fees, yet Fuqua failed to respond. The record indicates the notices were sent to the same address listed on Fuqua's complaint in the underlying action. *Page 9 
 {¶ 21} The record also reveals that Mustang Auto waited more than a year before filing the affidavit for unclaimed vehicle. The record reveals that the State of Ohio transferred Fuqua's Volkswagon on August 16, 2005, thus the vehicle remained in Mustang Auto's possession for more than two years from the date it was first delivered. Fuqua presented no evidence of the efforts he made to retrieve his Volkswagon while it was in Mustang Auto's possession for over two years.
 {¶ 22} In addition, the record reveals that Fuqua was aware of Mustang Auto's storage fees policy. Attached to Mustang Auto's motion for summary judgment, is a copy of a paid invoice dated April 17, 2003, for repair of the distributor cap on Fuqua's Volkswagon. The invoice states in pertinent part as follows: "Storage charges will apply after 48 hours left on property at a rate of $15.00 per day."[9] Thus, despite Fuqua's knowledge of Mustang Auto's storage fees policy, he presented no evidence that he attempted to pay the storage fees that had accrued.
 {¶ 23} We conclude that Fuqua failed to establish that Mustang Auto breached the bailment contract. Much to the contrary, it can reasonably be inferred by Fuqua's inaction for over two years, that he abandoned his Volkswagon. Consequently, summary judgment was properly awarded to Mustang Auto on Fuqua's breach of bailment contract claim. Accordingly, we overrule the assigned errors.
 Judgment affirmed. *Page 10 
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and MARY EILEEN KILBANE, J., CONCUR
[1] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[2] Id at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[3] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
[4] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[5] Id. at 293.
[6] Maloney v. Gen. Tire Sales, Inc. (1973), 34 Ohio App.2d 177,180.
[7] Manigault v. O'Connor Automotive, Cuyahoga App. No. 87891,2006-Ohio-6598, citing David v. Lose (1966), 7 Ohio St.2d 97, paragraph one of the syllabus.
[8] Id.
[9] Exhibit "2" Defendant's Motion for Summary Judgment. *Page 1